IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAIRI NUNAG-TANEDO, et al., | |
| Plaintiffs, | CIVIL ACTION FILE NO. |
| v. | 1:12-CV-01262-TWT-JFK |
| EAST BATON ROUGE PARISH SCHOOL BOARD, et al., | |
| Defendants. | |

**ORDER**

Pending before the court is Defendants Universal Placement International, Inc.'s ("UPI") and Lourdes "Lulu" Navarro's ("Navarro") motion [Doc. 1] to quash a Rule 45 subpoena issued from this court by Plaintiffs Mairi Nanag-Tanedo, *et al.*, and all other similarly situated individuals ("Plaintiffs") to third party Wells Fargo Bank, N.A., at 240 Peachtree Street NW, Atlanta, Georgia 30303.  This discovery dispute arises out of class action litigation pending in the Central District of California, Case No. SA CV 10-01172-JAK (ML Gx).  Pursuant to Fed. R. Civ. P. 45(c), UPI and Navarro move the court to quash the subpoena seeking financial documents pertaining to UPI, Navarro and related entities.  [Doc. 1].  In the alternative, UPI and Navarro seek an order narrowing the scope of the subpoena and/or a protective order governing

the production of any documents obtained pursuant to the subpoena. Although not specifically identified as such, the alternative relief sought by UPI and Navarro is properly obtained pursuant to Fed. R. Civ. P. 26(c).

## I.     Underlying Case

The underlying litigation is a putative class action lawsuit which was brought by the identified Plaintiffs, on behalf of themselves and other similarly situated individuals, in which they seek damages under the Trafficking Victims Protection Act, 18 U.S.C. § 1589, *et seq.* ("TVPA"), the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), for state law claims of fraud, and other claims for relief. [Doc. 2 at 2]. The case concerns an alleged scheme in which more than 350 highly-skilled Filipino teachers were systematically defrauded and exploited by UPI and Navarro, through the recruitment services performed by PARS International Placement Agency ("PARS"). The harm to Plaintiffs allegedly occurred during the process of being recruited and hired, while in the Philippines, for employment as teachers in the United States. The scheme allegedly functioned through the use of the federal government's H-1B "speciality occupation" visa program. [Id. at 1-2]. Plaintiffs contend that after being selected for the program, they were advised that they needed to provide certain documents and pay a non-refundable

2

recruitment fee of approximately $5,000, an amount in excess of a year's wages in the Philippines. After this amount was paid, Plaintiffs contend that they were advised that a second fee, equaling three months wages in the United States, was also due. Plaintiffs assert they felt compelled to pay the second fee or face severe financial harm due to the debt already incurred to make the first payment. [Id. at 2].

UPI and Navarro contend that Plaintiffs served the subpoena on Wells Fargo seeking the same information that is currently being sought directly from Defendants in the underlying litigation and is the subject of a discovery dispute in that litigation. They claim that Plaintiffs are attempting to use the third-party subpoena to Wells Fargo to circumvent the discovery process in the forum court in California. [Doc. 1 at 1]. UPI and Navarro contend that instead of making a good faith effort to resolve the discovery dispute and in spite of continuing efforts by them to provide additional responsive documents, Plaintiffs served the Rule 45 subpoena on the banking entity. [Doc. 1 at 1]. Plaintiffs do not dispute that the documents being sought from Wells Fargo relate to the same information that is the subject of a discovery dispute in the underlying litigation.[1] [Doc. 2].

---

[1]In fact, Plaintiffs appear to concede that this information is also being sought from UPI and Navarro and other Defendants in contending that "the fact that a party has sought discovery from an opposing party does not preclude it from seeking similar

3

UPI and Navarro argue that the subpoena, which seeks financial information in which they have a right to privacy, is "intrusive, overbroad, and harassing" and does not seek information relevant to the claims at issue. [Doc. 1 at 1]. UPI and Navarro rely in large part on privacy rights granted by and the showing that must be made under California law to obtain financial documents. [Id. at 4-7]. Plaintiffs oppose the motion to quash arguing that the financial information sought from Wells Fargo is directly relevant and highly material to the issue of the relationship between UPI, Navarro and PARS and to the issue of punitive damages. [Id. at 1-6]. Plaintiffs also dispute the applicability of California law to the issue of the privacy rights of UPI and Navarro in resolving the motion to quash. [Id. at -8]. UPI and Navarro counter these arguments contending that they "have never disputed that they received money from Plaintiffs or that UPI and PARS worked together to provide services that they had contracted with Plaintiffs to provide. . . ." [Doc. 4 at 3]. And UPI and Navarro assert that obtaining these financial records to establish punitive damage claims, prior to a finding of liability, does not provide a basis for denying the motion to quash. [Id. at 5]. UPI and Navarro continue to argue that their rights under California law should be applied to resolve the motion to quash. [Id. at 4].

---

discovery from a third party." [Doc. 2 at 8].

Wells Fargo, the third party from whom the records are sought, has not sought to oppose the subpoena and is only withholding providing the documents based on the assertions of privilege and privacy by UPI and Navarro. [Doc. 1-1, Sullivan Declaration, Ex. E]. Accordingly, the dispute over the production of the subpoenaed records involves only parties to the underlying litigation.

## II.   Discussion

As noted *supra*, UPI and Navarro have filed a motion to quash the Rule 45 subpoena to Wells Fargo and, in the alternative, have sought to have the court narrow the scope of the subpoena and enter a protective order if any documents are ordered produced. The third party has not sought relief from compliance with the subpoena. The first issue the court must decide is whether UPI and Navarro have standing to bring the present motion to quash the subpoena. "[A] party ordinarily lacks standing to quash a subpoena directed at a non-party unless the party is seeking to protect a personal privilege or right." Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D. N.Y. 2004); see also Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (although a party, not the recipient of a subpoena, does not have standing to bring a motion quash, "it appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a

5

'personal right or privilege with respect to the materials subpoenaed'") (citation omitted)).

As UPI and Navarro contend [Doc. 1 at 2], and Plaintiffs do not dispute, due to their privacy interests in the financial documents being sought by the subpoena to Wells Fargo, UPI and Navarro have a sufficient interest in the documents being sought to seek to quash the subpoena. See The Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc., 2011 WL 2670948, at *2 (D. N.J. June 30, 2011) ("a party whose banking records are subpoenaed through a third-party financial institution . . . has standing to challenge the subpoena"); Old Towne Development Group, L.L.C. v. Matthews, 2009 WL 2021723, at *1 n.1 (M.D. La. July 9, 2009) (same); Fox Industries, Inc. v. Gurovich, 2006 WL 2882580, at *13 (E.D. N.Y. October 6, 2006) (same). The court further notes that permitting the production of the documents from Wells Fargo without allowing UPI and Navarro the opportunity to bring a motion to quash would effectively moot the discovery dispute between the parties in the forum court. Accordingly, the court finds that UPI and Navarro have standing to bring the motion to quash.

The second issue to be addressed by the court is how to ensure that rulings of the forum court regarding the parallel discovery dispute between the parties and that

6

court's management of the underlying case are not frustrated by the filing of the motion to quash in this District. As is evident from the briefs filed by UPI and Navarro and Plaintiffs, the underlying litigation, which has been ongoing for two years and has involved a lengthy discovery process, is complex. Although the forum court is no doubt thoroughly familiar with all aspects of this litigation and its procedural history, making it ideally suited to rule on this discovery dispute, especially as it involves issues of the application of California privacy laws, the undersigned is not familiar with the various issues, discovery disputes or underlying litigation. Given the forum court's greater familiarity with the case, it seems clear that the forum court in the Central District of California is the court best prepared to rule on the present discovery dispute. The question, therefore, arises whether this court may transfer the pending motion to the forum court.

> Rule 26(c) states in pertinent part:
>
> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending - or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.

Fed. R. Civ. P. 26(c) (as amended 2007). Thus, "Rule 26(c), governing protective orders, expressly permits flexibility in cases in which discovery disputes involve

multiple courts." United States v. Star Scientific, Inc., 205 F. Supp. 2d 482, 485 (D. Md. 2002); see also Kearney for Kearney v. Jandernoa, 172 F.R.D. 381, 383 n.4 (N.D. Ill. 1997) (noting that "a protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena issued"). Additionally, the Advisory Committee Notes to the 1970 revisions to Subdivision (c) sanction remitting motions for protective orders to the court where the underlying action is pending: "'The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.'" Star Scientific, 205 F. Supp. 2d at 485 (quoting Fed. R. Civ. P. 26(c), Advisory Committee Notes, 1970 Amendment, Subdivision (c)). Given the clear language of Rule 26 and the Advisory Committee Notes, there is no question that a Rule 26 motion for a protective order may be transferred or remitted from a court with ancillary jurisdiction over a discovery dispute to the forum court in which the underlying litigation is pending. In the present case, due to the interest in uniform treatment of discovery issues and judicial economy, as well as the complex nature of the underlying litigation, the undersigned concludes that to the extent UPI and Navarro seek relief in the form of a Rule 26 protective order, the pending motion should be

8

transferred to the trial court in the Central District of California where the underlying litigation is pending.

The court turns next to the issue of whether the Rule 45 motion to quash may also be transferred to the forum court. The language of Rule 45 does not appear to offer the same flexibility accorded by Rule 26(c). Rules 45(c)(3)(A) and 45(c)(3)(B), as amended in 2007, provide that the authority to quash, modify, or condition a subpoena resides in the court issuing the subpoena.[2] However, in commenting on the 1991 Amendments to Rule 45, the Advisory Committee Notes state that Subdivision (c) "is not intended to diminish rights conferred by Rules 26-37 or any other authority." This is significant because, as noted *supra*, the Advisory Committee Notes to Rule 26(c) explicitly provide that a district court "may, and frequently will, remit the deponent or party to the court where the action is pending."

Due to the lack of clarity in Rule 45(c) and the Advisory Committee Notes, it is not surprising that there is a split of authority on the issue of whether a court with ancillary jurisdiction over a motion to quash has the authority to transfer the motion to the forum court. See Star Scientific, 205 F. Supp. 2d at 485 n.4 (noting that the

---

[2]As stated in the Advisory Committee Notes for the 2007 amendments, "These changes are intended to be stylistic only."

Eighth and Tenth Circuits supported such transfers but that the Seventh and District of Columbia Circuits found such transfers inappropriate); see also In re Friedman's, Inc., 356 B.R. 779, 780 (S.D. Ga. 2005) (same).  The Eleventh Circuit Court of Appeals has not ruled on this issue.  Wright and Miller agree with those courts holding that such transfers are permitted by Rule 45 and state that it is "within the discretion of the district court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending."  Charles Alan Wright, Arthur R. Miller, 9A Federal Practice & Procedure § 2463.1 (2008); see also The Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc., 211 F.R.D. 568, 660 (D. Kan. 2003) ("it is within the discretion of the court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending").

While it does not appear that transferring a motion to quash should be the routine practice of a court, courts faced with circumstances similar to those found in this case have ordered a transfer.  Specifically, in CMC Interconnect Technologies, Inc. v. Fairchild Semiconductor Corp., 2009 WL 539674 (D. Ariz. March 4, 2009), the court noted that Rule 45's preference for the court issuing the subpoena to resolve disputes arising therefrom "presumably is because the recipient of the subpoena will

often not be a party to underlying litigation and often will not be subject to the jurisdiction of the court presiding over that litigation." Id., at *2. In CMC Interconnect Technologies, however, although CMC was the third party recipient of the subpoena, the dispute over the subpoena was between two parties to the underlying litigation involving questions of privilege and waiver of privilege and, accordingly, subject to the forum court's jurisdiction. Id. Due to that fact, as well the forum court's familiarity with the complex litigation and with related discovery disputes, the court ordered the motion transferred to the forum court for resolution. The same is true in this case. Wells Fargo may be the recipient of the subpoena, but the dispute is between parties to the underlying litigation over whom the forum court has jurisdiction. Transferring the motion to quash will not call into play Rule 45's concerns of convenience for the third party.[3]

---

[3] The court also notes that, although the subpoena was served on Wells Fargo in Atlanta, the processing and handling of the subpoena and the production of documents pursuant to the subpoena involves Wells Fargo's Subpoena Processing Department in Philadelphia, Pennsylvania. [Doc. 1, Sullivan Declaration, Ex. E]. Further, while there must be an explanation for selecting to serve the subpoena on a Wells Fargo office located in Atlanta, the court notes that offices of that bank are located throughout California - including the Central District of California - with its headquarters located in nearby San Francisco, at which this subpoena arguably could have been served and arguably giving the forum court jurisdiction over the third party. See https://www.wellsfargo.com/downloads/pdf (last visited May 10, 2012).

In the present case, the court finds that because of the many unusual aspects of the pending discovery dispute outlined *supra* and in light of the fact the dispute is between parties to the underlying litigation, a transfer to the forum court is the most just and efficient way of ruling on UPI's and Navarro's Rule 45 motion to quash, as well as determining whether the entry of a Rule 26 protective order is appropriate.

### III. Conclusion

For these reasons, the court **ORDERS** that, pursuant to Fed. R. Civ. P. 26 and 45, UPI's and Navarro's motion [Doc. 1] to quash be **TRANSFERRED** to the Central District of California for resolution.

The Clerk of Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge and to close this case.

**SO ORDERED THIS** 15th day of May, 2012.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE